J-S40044-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                           :              PENNSYLVANIA
                           :
               v.              :
                           :
                           :
TERRENCE L. RIDLEY             :
                           :
             Appellant        :     No. 3244 EDA 2019

Appeal from the Judgment of Sentence Entered October 11, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0005285-2018


BEFORE:    SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:              **FILED NOVEMBER 10, 2020**

Appellant, Terrence L. Ridley, appeals from the judgment of sentence imposed following his convictions for Drug Delivery Resulting in Death, Conspiracy to Commit Drug Delivery Resulting in Death, Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance (PWID), Criminal Use of a Communication Facility, and Involuntary Manslaughter.[1]  For the reasons set forth below, we remand this case to the trial court for further findings on whether dismissal of the charges was required by Rule 600 of the Pennsylvania Rules of Criminal Procedure for failure to bring Appellant to trial within 365 days.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2506(a), 18 Pa.C.S. § 903, 35 P.S. § 780-113(a)(30), 18 Pa.C.S. § 7512(a), and 18 Pa.C.S. § 2504(a), respectively.

This case arises out of the March 22, 2018 fentanyl overdose death of Amanda Risko. Appellant was convicted of the above offenses following a bench trial. The trial court found the following facts:

> Risko had just completed … drug treatment at a local drug rehabilitation center and was released on March 21, 2018. That same day, immediately upon release from the rehabilitation center, Risko contacted Appellant's co-defendant, Michael Santangelo, to get him to reach out to Appellant to buy fentanyl for her. Santangelo had been buying fentanyl consistently from Appellant for months prior to March 21, 2018. Both Risko and Santangelo were very familiar with the quality of the fentanyl they had previously obtained from Appellant and were impressed with the potency of the particular brand of fentanyl which was packaged and identified on the street as "Rolex" brand. At Risko's request, Santangelo made contact with Appellant on March 21, 2018; purchased the fentanyl with money provided by Risko and delivered the fentanyl to second co-defendant of Appellant and paramour of Risko, Ronald Filderman, who ultimately delivered the drugs to Risko. Filderman was present with Risko when she used some of the drugs provided by Appellant and additional bags of the "Appellant provided" fentanyl was [*sic*] left with Risko when Filderman left the residence the next morning. … [U]pon return to the residence, Filderman found Risko dead in her bed, it now being March 22nd.

Trial Court Opinion at 2-3 (record citations omitted) (quotation marks in original). Risko and Santangelo lived in Bucks County, Pennsylvania, and Appellant lived in Trenton, New Jersey. *Id.* at 3. Santangelo purchased the drugs that Risko consumed from Appellant in Trenton, New Jersey and brought them back to Risko and Filderman in Bucks County, Pennsylvania. N.T. Trial, 8/27/19, at 158-65. Risko ingested the drugs in Bucks County, Pennsylvania and died in Bucks County, Pennsylvania. Trial Court Opinion at 12-13. After Risko's death, Santangelo cooperated on April 3, 2018 in a controlled drug

buy in which he bought "Rolex" fentanyl from Appellant in Trenton, New Jersey. *Id.* at 3-4.

Appellant was charged on July 12, 2018 with Drug Delivery Resulting in Death and other offenses relating to the March 21, 2018 drug sale and Risko's death, and was arrested on July 13, 2018. Criminal Complaint; N.T. Trial, 8/28/19, at 17-18. Appellant's trial was originally scheduled for January 28, 2019, but that trial date was cancelled after the Commonwealth filed a motion on December 21, 2018, to consolidate Appellant's case with its cases against Santangelo and Filderman. Pretrial Ex. 1, Secure Docket Entries at 1, 5-6. No new trial date was set at that time. On January 25, 2019, Appellant filed a motion for release on nominal bail pursuant to Pa.R.Crim.P. 600(B) because he had been held in pretrial incarceration for over 180 days. Following a hearing on February 1, 2019, Appellant was released on nominal bail with GPS monitoring. On March 29, 2019, following a pretrial conference, Appellant's trial was scheduled for June 25, 2019. Pretrial Ex. 1, Secure Docket Entries at 8.

On April 4, 2019, Appellant filed a petition for habeas corpus asserting, *inter alia*, lack of jurisdiction. The Commonwealth filed a motion on April 18, 2019 to allow evidence of the April 3, 2018 controlled buy to be admitted at Appellant's trial pursuant to Pa.R.E. 404 and Appellant opposed this motion. Following hearings on both of these issues, the trial court, on May 1, 2019, granted the Commonwealth's motion to admit the controlled buy and denied

Appellant's petition for habeas corpus. N.T. Pre-Trial Conference, 5/1/19, at 72-85. On June 24, 2019, the Commonwealth requested a continuance because the prosecutor was still trying a case before another judge and Appellant did not object to that continuance. N.T. Trial, 8/26/19, at 23-24; Pretrial Ex. 1, Secure Docket Entries at 11.

Appellant's trial did not begin until August 26, 2019. This trial date was set by the court after the continuance of the June 25 date was requested. N.T. Trial, 8/26/19, at 25-27. On the morning of August 26, 2019, before trial started, Appellant filed a motion to dismiss all charges with prejudice on the ground that the Commonwealth failed to bring him to trial within 365 days as required by Pa.R.Crim.P. 600(A). The trial court heard from the prosecutor and Appellant's counsel concerning the reasons for delay of the trial date and denied Appellant's motion to dismiss. N.T. Trial, 8/26/19, at 5-38. Following that ruling, Appellant waived his right to jury trial and a bench trial was held from August 26 to August 29, 2019. Before Appellant's trial commenced, the Commonwealth and defendants Santangelo and Filderman jointly requested a continuance of the cases against them, which the trial court granted, *id.* at 3-5, and Santangelo and Filderman, both of who testified as Commonwealth witnesses against Appellant, were not tried with Appellant.

On September 5, 2019, the trial court found Appellant guilty of Drug Delivery Resulting in Death, Conspiracy to Commit Drug Delivery Resulting in Death, PWID, Criminal Use of a Communication Facility, and Involuntary

Manslaughter. On October 11, 2019, the trial court sentenced Appellant to 6 to 12 years' incarceration for Drug Delivery Resulting in Death and imposed no further penalty for the other offenses. No post-sentence motions were filed. Appellant filed this timely appeal from the judgment of sentence on November 8, 2019.

Appellant presents the following issues for our review:

A. The trial court abused its discretion in granting the Commonwealth's pre-trial motion to introduce subsequent bad acts.

B. Did the trial court act erroneously in failing to dismiss several charges based on lack of jurisdiction?

C. Did the trial court erred [*sic*] in denying Appellant's motion to dismiss pursuant to Rule 600?

D. Did the trial court err by finding Appellant Ridley guilty of all charges when the evidence was not sufficient because the testimony from the two co-[defendants] was inconsistent and unreliable.

Appellant's Brief at 4 (unnecessary capitalization and trial court answers omitted). We first address Appellant's third issue.

Pennsylvania Rule of Criminal Procedure 600 requires that the Commonwealth bring a defendant to trial within 365 days from the date on which the criminal complaint was filed. Pa.R.Crim.P. 600(A)(2)(a); ***Commonwealth v. Barbour***, 189 A.3d 944, 947 (Pa. 2018). Rule 600 provides that in determining whether the 365-day period has expired, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in

the computation of the time within which trial must commence" and that "[a]ny other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

If the defendant is not brought to trial within 365 days, he may file a motion at any time before trial requesting dismissal of the charges against him with prejudice. Pa.R.Crim.P. 600(D)(1). When such a motion is filed, the trial court is required to conduct a hearing and identify each period of delay and attribute it to the responsible party to adjust the 365-day period and determine the date by which the defendant must be tried. *Id.*; *Barbour*, 189 A.3d at 947.

Where delay was not caused by the defendant, the burden is on the Commonwealth to show by a preponderance of the evidence that it acted with due diligence to bring the defendant to trial within Rule 600's time limit. *Commonwealth v. Bradford*, 46 A.3d 693, 701 (Pa. 2012); *Commonwealth v. Thompson (Thompson II)*, 136 A.3d 178, 182-83 (Pa. Super. 2016); *Commonwealth v. Colon*, 87 A.3d 352, 359 (Pa. Super. 2014). "Absent a demonstration of due diligence, establishing that the Commonwealth has done 'everything reasonable within its power to guarantee that the trial begins on time,' the Commonwealth's failure to bring the defendant to trial before the expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice." *Barbour*, 189 A.3d at 947 (quoting *Commonwealth v. Matis*, 710 A.2d 12 (Pa. 1998)) (brackets

and citations omitted). The defendant is not required to object to a trial date beyond the period prescribed by Rule 600, provided that he does not indicate that he approves of or accepts that delay. *Colon*, 87 A.3d at 361; *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004) (*en banc*).

We review a trial court's denial of a Rule 600 motion to dismiss for abuse of discretion. *Thompson II*, 136 A.3d at 182; *Hunt*, 858 A.2d at 1238. Where, however, the trial court has failed to conduct an adequate analysis of the periods of delay and whether the Commonwealth acted with due diligence, the case should be remanded for further determinations by the trial court. *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010); *Commonwealth v. Thompson (Thompson I)*, 93 A.3d 478, 488-89 (Pa. Super. 2014).

Here, Appellant's trial began on August 26, 2019, 410 days after the criminal complaint was filed on July 12, 2018, and beyond the Rule 600 deadline, unless at least 45 days of delay in bringing him to trial were caused by Appellant or can be excluded because they occurred despite the Commonwealth's exercise of due diligence. There was no evidence or contention that Appellant requested any continuances or delays of the trial. Trial Court Opinion at 24. Indeed, the Commonwealth expressly conceded at the hearing on Appellant's motion for nominal bail that none of the delays through that date, February 1, 2019, were caused by Appellant. N.T. Bail Hearing, 2/1/19 at 4.

The trial court ruled that there was no Rule 600(A) violation because the Commonwealth acted with reasonable diligence. The court, however, failed to analyze the delays and make findings concerning specific periods of delay. Rather, the only portions of its opinion that could be considered findings or determinations concerning the Rule 600 issue, as opposed to statements of the law or the parties' contentions, are the following, none of which references specific dates or the number of days of delay:

> There was a history of attempts to get the matter inside a courtroom but the failure to try the case earlier were [*sic*] not a result of a failure of diligence on the part of the Commonwealth of Pennsylvania nor at any time did the Appellant object to any continuances.
> 
>       \*           \*           \*
> 
> This matter presented a number of scheduling challenges in light of the attempts to preserve judicial resources and to promote consistency by consolidating the three trials of the Appellant and his two co-defendants.
> 
>       \*           \*           \*
> 
> We concluded that the Commonwealth at all times did in fact act in good faith in regards to proceeding promptly in moving this case to trial. At no time did the Commonwealth proceed to impose a delay over the objection and against the freely exercised will of the Appellant.
> 
>       \*           \*           \*
> 
> Counting the days where the scheduled trial dates had to be set back due to discovery requests beyond the thirty (30) day period to pursue discovery and the days deemed consented to or days where the Commonwealth could not try the case due to unavailability of the pre-assigned prosecutor due to another murder case, we appropriately denied Appellant's Motion to Dismiss.

Trial Court Opinion at 22-23, 24-25.

These conclusory statements are insufficient for proper review. Moreover, to the extent that the trial court referenced specific sources of

- 8 -

delay, the court's statements are either unsupported by the record or there are no factual findings adequate for this Court to review its conclusions.

The only discovery motions that appear in the record are a request for discovery in Appellant's omnibus pretrial motion filed on April 25, 2019 and a motion to compel discovery filed by Appellant on August 13, 2019, after the expiration of the 365-day period. Pretrial Ex. 1, Secure Docket Entries at 5-11; Omnibus Pretrial Motion at 5-6. The record is clear that neither of these discovery requests caused the failure to bring Appellant to trial within 365 days. The June 25, 2019 trial date was set on March 29, 2019, before Appellant's omnibus pretrial motion, and the June 24, 2019 continuance was not caused by a discovery issue. Pretrial Ex. 1, Secure Docket Entries at 8, 11; N.T. Trial, 8/26/19, at 22-24. The August 13, 2019 discovery request cannot support the trial court's denial of the motion to dismiss because delays caused by the defendant after the 365 days have already expired are irrelevant to the determining whether Commonwealth has violated Rule 600. *Barbour*, 189 A.3d at 959; *Colon*, 87 A.3d at 358.

With respect to delay caused by consolidation of Appellant's case with the cases against his co-defendants, the trial court made no finding concerning the number of days of delay from that cause. In addition, the court did not analyze whether such delay could constitute due diligence by the Commonwealth where the Commonwealth in fact chose to sever the co-defendants' trials from Appellant's trial.

The only other specific cause of delay identified by the trial court was the continuance granted on June 24, 2019 because the prosecutor was on trial in another case. Appellant did not object to that continuance. Where the defendant does not object to a continuance to a date beyond the Rule 600 time limit, the failure to object constitutes a waiver of any Rule 600 claim for that delay. *Hunt*, 858 A.2d at 1241; *Commonwealth v. Walls*, 449 A.2d 690, 692 (Pa. Super. 1982). Appellant's counsel stated at the trial court's hearing on the Rule 600 motion that she agreed only to a continuance until the prosecutor finished his other trial, that the continuance did not require a trial date beyond the Rule 600 time limit because over two weeks remained after June 25, 2019 before the 365 days expired, and that she did not agree to the August 26, 2019 date. N.T. Trial, 8/26/19, at 24-27. The trial court, however, made no credibility findings and no factual findings as to the length of the continuance required by the prosecutor's schedule conflict, whether the trial could have been rescheduled for a date before July 13, 2019, or whether Appellant's counsel agreed to the August 26, 2019 date or to a date beyond July 12, 2019.[2]

_____

[2] The Commonwealth argues that the record demonstrates conclusively that Appellant agreed to a trial date beyond the Rule 600 limit because when it requested the final continuance, Appellant's trial was scheduled to begin on July 24, 2019, a date more than 365 days after the criminal complaint was filed. Appellee's Brief at 35-37. This contention is inaccurate. Contrary to the Commonwealth's repeated misstatements, the date that trial was scheduled

- 10 -

Because the trial court failed to identify the periods of delay that it excluded in its determining that the Commonwealth had not violated Rule 600 and failed to make sufficient findings concerning those delays, remand is required for further findings by the trial court. *Selenski*, 994 A.2d at 1089; *Thompson I*, 93 A.3d at 488-89. While it is possible that the trial court's findings on remand could render Appellant's remaining issues moot if they cause it to change the conclusions that it has reached, it is likely that this case will return to this Court following remand. In the interest of judicial economy, we therefore also address Appellant's first and fourth issues.[3]

In his first issue, Appellant argues that the admission of evidence of the April 3, 2018 controlled drug buy was error. We may reverse a trial court ruling on the admissibility of evidence only where it is shown that the trial court abused its discretion. *Commonwealth v. Gill*, 206 A.3d 459, 466 (Pa.

_____

to begin was June 25, 2019, less than 365 days after the criminal complaint was filed, not July 24, 2019. Pretrial Ex. 1, Secure Docket Entries at 1, 8.

[3] We do not address Appellant's second issue, which challenges his PWID and Criminal Use of a Communications Facility convictions on the grounds that the actions on which these charges are based occurred solely in New Jersey. The trial court in its analysis of this issue relied heavily on *Commonwealth v. Peck*, 202 A.3d 739 (Pa. Super. 2019). On September 24, 2019, the Pennsylvania Supreme Court granted allowance of appeal in *Peck* and that appeal is presently pending. *Commonwealth v. Peck*, 218 A.3d 374 (Pa. 2019). Because the Supreme Court's decision in *Peck* may affect Appellant's second issue, it is not in the interest of judicial economy to address that issue at this time.

2019); ***Commonwealth v. Gad***, 190 A.3d 600, 603 (Pa. Super. 2018);

***Thompson I***, 93 A.3d at 491.

> An appellate court will not find an abuse of discretion "based on a mere error of judgment, but rather ... where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." Importantly, an appellate court should not find that a trial court abused its discretion merely because the appellate court disagrees with the trial court's conclusion.

***Gill***, 206 A.3d at 466-67 (quoting ***Commonwealth v. Eichinger***, 915 A.2d

1122 (Pa. 2007)) (ellipsis and brackets in original, citations omitted).

> Pennsylvania Rule of Evidence 404(b) provides:
>
> 1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b). The trial court ruled that the April 3, 2018 drug buy from

Appellant was admissible on the ground that it was relevant to show identity,

to corroborate Santangelo's testimony that Appellant was the seller in the

March 21, 2018 drug transactions that caused Risko's death. Trial Court Opinion at 5-6, 8; N.T. Pre-Trial Conference, 5/1/19, at 75-77.[4]

For evidence of another crime to be admissible to prove identity of the defendant as the perpetrator of the crimes with which he is charged, there must be a high degree of similarity in the details of the crimes. **Commonwealth v. Ross**, 57 A.3d 85, 102 (Pa. Super. 2012) (*en banc*); **Commonwealth v. Weakley**, 972 A.2d 1182, 1189 (Pa. Super. 2009); **Commonwealth v. Miles**, 846 A.2d 132, 136 (Pa. Super. 2004) (*en banc*). The fact that the crimes are of the same type is not sufficient to permit admission of evidence of another crime to prove that the defendant is the person who committed the crimes with which he is charged; "much more is demanded than the mere repeated commission of crimes of the same class." **Ross**, 57 A.3d at 102 (quoting **Commonwealth v. Shively**, 424 A.2d 1257 (Pa. 1981)) (emphasis omitted). Rather, the crimes must share features

_____

[4] The trial court in its opinion also stated that the controlled buy was relevant to show Appellant's knowledge and was admissible under the *res gestae* exception to the prohibition on evidence of other bad acts. Trial Court Opinion at 8-9. Neither of these other reasons is sufficient for the admission of the controlled buy evidence. Because the controlled buy occurred subsequent to the March 21, 2018 events on which the charges were based, it is not probative of Appellant's knowledge when the crimes were committed. Nor is it part of the complete story of the events relevant to those crimes, as it was separate from and subsequent to those events. Indeed, it was not even the means by which Appellant was identified to the police as the supplier of the March 21, 2018 drugs - Santangelo identified Appellant as the supplier before the April 3, 2018 controlled buy. N.T. Trial, 8/27/18, at 187-88; N.T. Trial, 8/28/18, at 109-11.

sufficiently distinctive that they can be viewed as a signature of the defendant. *Ross*, 57 A.3d at 102; *Weakley*, 972 A.2d at 1189; *Miles*, 846 A.2d at 136.

Here, the trial court found that the details of the controlled buy and Santangelo's March 21, 2018 drug purchases were nearly identical and shared aspects beyond those generally present in drug sales. Trial Court Opinion at 3-4, 8-9, 11-12; N.T. Pre-Trial Conference, 5/1/19, at 75-77. These conclusions are supported by the record.

The participants and manner in the transactions were conducted were the same and the transactions were close in time. N.T. Trial, 8/27/19, at 162-63, 165, 190-93, 214; N.T. Trial, 8/28/19, at 61-64, 93-94. More importantly, the April 3, 2018 drug sale shared several distinctive features with the March 21, 2018 sales and the drugs that caused Risko's death. Drugs sold on both dates bore the same "Rolex" label and although sold as heroin, they contained fentanyl and not heroin. N.T. Trial, 8/26/19, at 97-98, 108-10, 116-17; N.T. Trial, 8/27/19, at 24-27, 84-85, 160, 162-63, 171, 174-75, 185-86, 191-93, 196-97, 214, 232; N.T. Trial, 8/28/19, at 16-17, 61, 64, 67, 70-71, 92-93; Commonwealth Exs. 9, 21-C; N.T. Trial, 8/29/19, at 29-30, 33-34, 39; Commonwealth Exs. 33, 34. Risko's death was caused by fentanyl and no evidence of heroin was found in the toxicology tests on her body fluids. N.T. Trial, 8/27/19, at 116-20, 126-31, 143, 147-49, 152.

Given the presence of these distinctive shared features, we cannot say, under the deferential standard of review that we must follow, that the trial

court abused its discretion in admitting this evidence. **Compare Weakley**, 972 A.2d at 1187-90 & n.7 (other crime admissible where perpetrators of both charged crime and other crime used the same kind of duct tape and plastic flex ties on the victims and committed crimes in the same type of location); **Commonwealth v. Broaster,** 863 A.2d 588, 591-93 (Pa. Super. 2004) (evidence of defendant's possession of other gun loaded with the same distinctive combination of bullet types as the murder weapon was admissible to identify defendant and connect him to the murder).

Appellant also contends that the controlled buy evidence was inadmissible even if relevant for a permissible purpose because the prejudicial effect of this evidence of drug dealing outweighed its probative value. We do not agree. The controlled buy evidence did not show any different conduct than the testimony that it corroborated and the distinctive features that it shared with the fatal drug sale were of significant probative value in confirming that Santangelo's testimony was not a mistaken or false identification. Moreover, the finder of fact here was the trial judge, not a jury. The danger of prejudice is considerably reduced where the finder of fact is the trial judge rather than a jury. **Commonwealth v. Dent**, 837 A.2d 571, 582 (Pa. Super. 2003); **Commonwealth v. Thomas**, 783 A.2d 328, 335 (Pa. Super. 2001). **Commonwealth v. Irwin**, 579 A.2d 955, 957 (Pa. Super. 1990). "[T]rial judges sitting as fact finders in criminal cases are presumed to ignore prejudicial evidence in reaching a verdict." **Dent**, 837 A.2d at 582.

In his fourth issue, Appellant challenges his Drug Delivery Resulting in Death and Involuntary Manslaughter convictions on the ground that the evidence was insufficient to show that he supplied the drugs that caused Risko's death.[5] Our standard of review on this issue is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. … Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017) (quoting

*Commonwealth v. Antidormi*, 84 A.3d 736 (Pa. Super. 2014)).

Here, the testimony of Santangelo and Filderman was sufficient to show that Santagelo purchased "Rolex" bags from Appellant for Risko at her request on March 21, 2018, that Risko had two of these "Rolex" bags with her the

---

[5] In this appeal, Appellant has not asserted any arguments that the evidence at trial was insufficient to prove any elements of any of the crimes for which he was convicted other than causation of Risko's death. The sufficiency of the evidence to support Appellant's Conspiracy, PWID, and Criminal Use of a Communication Facility convictions, which do not require proof that he caused Risko's death, is not before us.

morning of the day that she died, and that those bags were empty when Filderman found her dead. N.T. Trial, 8/26/19, at 97-99, 104, 108-10; N.T. Trial, 8/27/19, at 22-29, 35-36, 61-62, 84-85, 93, 161-65, 171, 174-75, 185-86. The Commonwealth's expert testimony showed that the torn bag found with Risko after her death tested positive for fentanyl and that Risko died from a fentanyl overdose. N.T. Trial, 8/27/19, at 116-20, 129, 143, 147-49; N.T. Trial, 8/28/19, at 54-55; N.T. Trial, 8/29/19, at 29-30; Commonwealth Ex. 33.

Appellant contends that this evidence was insufficient because Santangelo's and Filderman's testimony was inconsistent and unreliable and because the Commonwealth did not eliminate the possibility that Risko obtained other drugs from other sources before she died. Neither of these arguments is meritorious.

Appellant's first argument is not a valid ground for a challenge to the sufficiency of the evidence. Sufficiency of the evidence review does not include an assessment of the credibility of the testimony offered by the Commonwealth. *Commonwealth v. Crosley*, 180 A.3d 761, 768 n.2 (Pa. Super. 2018); *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003). Rather, challenges to the credibility of witnesses are challenges only to the weight of the evidence, not its sufficiency. *Commonwealth v. Kinney*, 157 A.3d 968, 971-72 (Pa. Super. 2017); *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014). Appellant, however, has waived any

challenge to the weight of the evidence, as he did not file or orally make any motion in the trial court asserting that that the verdict was against the weight of the evidence. Pa.R.Crim.P. 607; **Commonwealth v. Cox**, 231 A.3d 1011, 1018 (Pa. Super. 2020); **Kinney**, 157 A.3d at 972.

Appellant's second sufficiency of the evidence argument also fails. As was noted above, the evidence may be sufficient to support a conviction even if it is wholly circumstantial and the facts established by the Commonwealth do not preclude every conceivable possibility of innocence. **Commonwealth v. Steele**, 234 A.3d 840, 845 (Pa. Super. 2020); **Brockman**, 167 A.3d at 38; **Commonwealth v. Colon-Plaza**, 136 A.3d 521, 525–27 (Pa. Super. 2016).

The Commonwealth's evidence here was sufficient for the trial judge to find beyond a reasonable doubt that the "Rolex" fentanyl supplied by Appellant was the only fentanyl in Risko's possession when she suffered the fatal fentanyl overdose. Filderman testified that when he left Risko on the morning of March 22, 2018 she was alive and there were two bags of Appellant's "Rolex" in the room with her. N.T. Trial, 8/26/19, at 104, 116-17; N.T. Trial, 8/27/19, at 35-36, 61-62, 84-85, 87, 89. There was no evidence that Risko had any fentanyl from any other supplier with her on March 21 or 22, 2018. While Filderman did not see Risko again until he found her dead later that day, he found her in the same room in the same partially clothed state that she was in when he had left. N.T. Trial, 8/26/19, at 103-05, 115-16; N.T. Trial, 8/27/19, at 92-93. In addition, evidence concerning the use and location of

Risko's cell phone was introduced at trial. This evidence showed that all of the calls to Risko's cell phone while Filderman was away went unanswered and that she did not make any calls or send any test messages after he left, and also supported the conclusion that Risko did not leave her house on March 22, 2018. N.T. Trial, 8/27/19, at 63-65; N.T. Trial, 8/28/19, at 140-46, 260; N.T. Trial, 8/29/19, at 15-18.

For the foregoing reasons, we conclude that the trial court failed to conduct an analysis adequate to permit this Court to conduct a meaningful review of its determination that the Commonwealth did not violate Rule 600. Accordingly, we remand for a period of thirty days for the trial court to file a supplemental Rule 1925(a) opinion identifying each period of delay in bringing Appellant to trial and providing an explanation of the trial court's reasoning and findings as to whether and how many days of such delays may be excluded under its Rule 600 calculation.

Case remanded. Jurisdiction retained.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2020